Filed 7/8/21  P. v. Robinson CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>LENORA ROBINSON,<br><br>  Defendant and Appellant. | A158229<br><br>(City and County of San Francisco Super. Ct. No. SCN197173) |

Appellant Lenora Robinson was sentenced to prison for life without the possibility of parole (LWOP) based on her conviction of first degree murder with special circumstances under a felony-murder theory after her cohort shot the victim of an attempted robbery in 2005.  (§§ 187, 190.2, subd. (a)(17)(A).)[1]  As a non-killer who was not alleged to have acted with an intent to kill, she was found to have acted "with reckless indifference to human life and as a major participant" in the underlying felony. (§ 190.2, subd. (d).)

About ten years after Robinson's trial, the Supreme Court issued its decisions in *People v. Banks* (2015) 61 Cal.4th 788

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

(*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). It refined the definition of "major participant" and "reckless indifference to human life" by construing those terms in "a significantly different, and narrower manner than courts had previously construed the statute." (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted June 24, 2020, S262011 (*Torres*).)

In 2018, the Legislature enacted Senate Bill 1437 (2017–2018 Reg. Sess.), which, among other things, limited the felony-murder rule to cases where the defendant was the actual killer, acted with an intent to kill, or acted as a "major participant" in the underlying felony and with "reckless indifference to life" as those terms are used in the statute defining the felony-murder special circumstance. (§§ 188, subd. (a)(3); 189, subd. (e).) The Legislature also added section 1170.95, which establishes a procedure for vacating murder convictions predating the amendment if they could not be sustained under the amended definition of murder. (§ 1170.95; Stats. 2018, ch. 1015, § 4.)

Robinson filed a petition under section 1170.95, arguing that although the jury that convicted her found she had acted as a major participant and with a reckless indifference to human life (which would preclude relief under section 1170.95), it did so by applying a definition of those terms that did not incorporate *Banks* and *Clark* and therefore was not binding. The trial court denied the petition after an evidentiary hearing.

2

We conclude the special circumstance allegation, without more, did not establish that Robinson was a major participant who acted with reckless disregard for life as those terms are now understood after *Banks* and *Clark*.  Nor was she barred from raising this issue in a petition under section 1170.95, rather than in a petition for a writ of habeas corpus.  Because it is not clear whether the trial court applied the correct burden of proof at the evidentiary hearing, we remand for a new hearing.

## I.   BACKGROUND[2]

### A. *Underlying Case*

At about 11:30 p.m. on May 14, 2005, Robinson and Anissa Jordan approached Almondo Alston and Floyd Holmes, who were walking down the street in the Tenderloin area of San Francisco, and asked them for some "E-tabs."  Greshinal Green then approached the two men with a gun and told them to lie down on the sidewalk, pointing the gun at Alston's chest.  Alston and Holmes complied with the demand and Robinson went through Alston's pockets.  Holmes was also robbed, but he did not identify the person who relieved him of his property.  He later told police several times that the gunman held the gun to his head.  After the robbery, Green and Robinson "took off" together and headed toward Turk Street.

At about 11:45 p.m., Alex Crispi was sitting on a "party bus" on Taylor Street and noticed what he thought to be an altercation or drug deal across the street from him.  One man,

---

[2] The facts are taken from our prior opinion in *People v. Green* (Aug. 26, 2009) A115777 [nonpub. opn.].)

3

later identified as Carlos Garvin, was walking north and passed two other "men" walking south. Crispi identified one of the "men" as Green. It looked like the two "men" attempted to block Garvin and push him; Green pulled out a gun and shot Garvin at point-blank range. Garvin fell to the sidewalk after being shot, and Green reached into his pocket before running south with his companion. A woman with a wrap on her head was standing a little bit north of the shooting and did not appear to be with the attackers; she screamed when the gun went off. The entire encounter lasted between 10 and 30 seconds.

The shooting was also witnessed by Gail Gatan, who was in a car waiting to pull into a parking lot when she saw the altercation. Gatan described the assailants as two men when she was interviewed by police and at the preliminary hearing. Gatan also recalled that a woman with her hair in a wrap was about halfway up the street yelling at the two men to get out of there, or words to that effect. At trial, Gatan identified one of the men as Green and the other person, whom she had previously believed was a male, as Robinson.

Two video surveillance cameras in the area captured events just before and after the shooting, although they did not show the shooting itself. A few minutes before the shooting, Green and Robinson were together near the intersection of Turk Street and Taylor Street and walked together side by side northbound on Taylor. Garvin walked by. A few moments later, Green and Robinson were back at the intersection of Turk and Taylor in "a quickened walk," with Robinson in front.

4

A police officer in a patrol car in the area saw two individuals running, who slowed their pace to a fast walk after noticing the presence of the police and turned westbound on Turk after reaching the intersection of Turk and Taylor. The officer originally believed the individuals to be two men, the second of whom was shorter and wearing a "floppy red" hat or beret.

A short while later, police stopped a Toyota Camry driven by MacDonald Grady that contained Green, Robinson and Jordan as passengers. Robinson was wearing a red hat and the officers recognized Green and Robinson as the two people they had seen running earlier that night. Police found two handguns inside the Camry, one of which was the murder weapon and which DNA evidence linked to Green and Jordan; the gun that was not the murder weapon was linked by DNA evidence to Robinson.

Robinson was jointly tried before a jury with Green, Jordan and Grady, and was convicted of first degree murder with an attempted robbery felony-murder special circumstance, attempted robbery, conspiracy to commit robbery, and possession of a firearm by an ex-felon, with principal-armed enhancements. (§§ 211, 664/211, 182, subd. (a)(1); 190.2, subd. (a)(17)(A); former 12021, subd. (a)(1); 12022.53, subd. (d), 12022, subd. (a)(1).) She was sentenced to prison for LWOP on the murder count. Green and Jordan were also convicted of first degree murder along with other charges and allegations. Grady was acquitted.

B. *Banks* and *Clark*

California's felony-murder special circumstance renders a defendant eligible for the death penalty or life without the

5

possibility of parole and applies when the trier of fact finds "[t]he murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit" specified felonies including robbery. (§ 190.2, subd. (a)(17)(A).) Section 190.2, subdivision (d), describes the scope of the felony murder special circumstance for an aider and abettor who neither kills nor intends to kill: "[E]very person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole. . . ." (§ 190.2, subd. (d).)

In 2015 and 2016, the Supreme Court clarified the factors properly considered in assessing felony-murder special-circumstance findings against a non-killer in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522. In *Banks*, the Supreme Court identified factors courts should consider in determining whether a defendant was a "major participant" under section 190.2, subdivision (d), and in *Clark*, it identified the factors that were relevant to reckless indifference to human life (with some obvious overlap with the major-participant factors specified in *Banks*).

6

To determine whether the defendant acted with reckless indifference, courts must "look to whether a defendant has " ' "knowingly engag[ed] in criminal activities known to carry a grave risk of death." ' " (*Banks*, *supra*, 61 Cal.4th at p. 801.) The *Clark* decision emphasized, "[W]hile the fact that a robbery involves a gun is a factor beyond the bare statutory requirements for first degree robbery felony murder, this mere fact, on its own and with nothing more presented, is not sufficient to support a finding of reckless indifference to human life for the felony-murder aider and abettor special circumstance." (*Clark*, *supra*, at p. 618.) [3]

C. *Section 1170.95*

Effective January 1, 2019, the legislature enacted Senate Bill 1437, which significantly modified the law relating to accomplice liability for murder. Among other things, it limited the felony-murder rule to cases where the defendant was the actual killer, acted with an intent to kill, or acted as a "major participant" in the underlying felony and with "reckless indifference to human life" as those terms are used in the statute

---

[3] The jury in this case was instructed with a pre-*Banks*/*Clark* version of CALCRIM No. 703 which required them to find that if the defendant was not the actual killer and did not intend to kill, "1. The defendant was a major participant in the crime; [¶] AND [¶] 2. When the defendant participated in the crime, he or she acted with reckless indifference to human life." The instruction did not describe the factors relevant to these elements. CALCRIM No. 703 has since been amended to incorporate the *Banks/Clark* factors, although this is not constitutionally compelled. (*People v. Price* (2017) 8 Cal.App.5th 409, 451.)

defining the felony-murder special circumstance.  (§§ 188, subd. (a)(3); 189, subd. (e).)  It also established section 1170.95, under which a person who was convicted of murder under the old law may seek to have that conviction vacated if she could no longer be convicted under the murder statutes as amended.

Section 1170.95, subdivision (c) provides the process by which the court is to decide the petition:  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."  Therefore, no order to show cause is issued and no hearing is held (§ 1170.95, subd. (d)(1)) unless the court first determines a prima facie showing of entitlement to relief.

D. *Robinson's Petition*

In 2019, Robinson filed a pro per petition for resentencing under section 1170.95, alleging that she could not be convicted of murder because of changes under Senate Bill 1437, in that she was not the actual killer, did not act with an intent to kill, and was not a major participant in the felony or did not act with

8

reckless indifference to human life.[4]  The court appointed counsel for Robinson.  The People filed a response and supplemental response to the petition and Robinson filed a reply.

The case was heard by the judge who had presided over the original trial.  In a hearing held June 7, 2019, the court heard the arguments of counsel and discussed the *Banks/Clark* factors after reviewing the pleadings.  The prosecution argued that unless the special circumstance finding was set aside in a habeas corpus proceeding, Robinson could not state a prima facie case for relief under section 1170.95.  The court issued an order to show cause to allow the parties to present any additional evidence they believed was necessary to resolve the petition.

At the evidentiary hearing heard July 25, 2019, the prosecution again argued Robinson's remedy, if any, was a petition for writ of habeas corpus.  The court rejected the argument that habeas corpus was the exclusive remedy.  It took judicial notice of the record of conviction[5] and indicated that it would consider a supplemental statement of facts submitted by the defense because those facts were consistent with its recollection of the trial evidence and there was no objection by the People.  No additional evidence was presented by either party.  The court then indicated that it would be deciding whether the criteria of *Banks/Clark* had been satisfied.

_____

[4] Co-defendant Jordan also filed a petition for resentencing under section 1170.95, which was granted in a separate proceeding.

[5] We take judicial notice of the record on appeal in case number A115777.  (Evid. Code, §§452, 459.)

9

The parties argued their interpretation of the evidence, with defense counsel positing that this was no more than a run-of-the mill armed robbery that went awry, and the prosecution arguing that Robinson's actions in participating in the first robbery a few minutes before, knowing a gun had been used and pointed at the victims, was enough to put her on notice that if she and Green met a victim who resisted, the gun would be used.

The court noted that during the first robbery, Green had pointed the gun at vulnerable parts of the victims' bodies (head and chest), rather than just showing it to them in his waistband, and that Robinson had pushed the murder victim during the second attempted robbery. It indicated there was a degree of planning because Robinson had acted as a decoy during the first robbery, and noted that Robinson had shown a complete lack of surprise after the shooting occurred, as contrasted with a bystander, who screamed and ran away. The court stated it had considered the *Clark* factors, as noted in the prior hearing, and found that Robinson had acted as a major participant in the attempted robbery and with reckless indifference to life.

## II. DISCUSSION

### A. *Petition under section 1170.95 v. Habeas Corpus*

The People argue that the trial court did not err in denying the petition under section 1170.95 after an evidentiary hearing, because it should not have held an evidentiary hearing at all. They contend the jury's felony-murder special circumstance finding required a determination that Robinson *was* a major

10

participant who acted with reckless indifference to human life, and that Robinson could not state a prima facie case for relief unless she first brought a successful habeas corpus proceeding.

Appellate decisions addressing the issue have reached different conclusions about whether a petition for writ of habeas corpus is a prerequisite to a section 1170.95 petition when a special circumstance has been found true but is alleged to be invalid under *Banks/Clark*. (Contrast *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted January 13, 2021, S265918; *People v. Allison* (2020) 55 Cal.App.5th 449, review denied December 23, 2020; *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted October 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted October 14, 2020, S264284 [remedy is to attack special circumstance in petition for writ of habeas corpus]; with *Torres*, *supra*, 46 Cal.App.5th at pp. 1179–1180, review granted June 24, 2020, S262011; *People v. York* (2020) 54 Cal.App.5th 250, review granted Nov. 18, 2020, S264954 (*York*); *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020 S262835 (*Smith*); *People v. Harris* (2021) 60 Cal.App.5th 939, 956–957, review granted April 28, 2021, S267802 (*Harris*) [habeas petition not required; issue may be raised in petition under § 1170.95].) This issue is currently pending before the Supreme Court in *People v. Strong* (2020) [nonpub. opn.] review granted March 10, 2021, S266606.

We agree with the approach taken in *Torres, York, Smith* and *Harris* for the same three reasons recently discussed by Division Four of this Court in *People v. Secrease* (2021) 63

Cal.App.5th 231 (*Secrease*), review granted June 30, 2021, S268862: "First, the statutory text suggests the Legislature saw the new section 1170.95 statutory remedy it created as cumulative to other available remedies, including habeas corpus, given its express statement in section 1170.95, subdivision (f), that '[t]his section does not diminish or abrogate any rights or remedies otherwise available to the petitioner.' Second, section 1170.95 explicitly contemplates that, upon showing a right to relief, a successful petitioner's "prior [murder] conviction, and any allegations . . . attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges' (§ 1170.95, subd. (d)(3)), which suggests the Legislature understood that vacatur of a special circumstance finding may occur as a consequence of a successful section 1170.95 proceeding. [Citation.] [¶] Third, we find it significant that section 1170.95, subdivision (d)(2) expressly provides that '[i]f there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner,' while omitting any reference to a felony-murder special-circumstance true finding being 'an automatic statutory bar' to resentencing eligibility." (*Id*. at pp. 256–257.)

      B. *Standard of Proof and Need for Evidentiary Hearing*

      At an evidentiary hearing under section 1170.95, subdivision (d)(3), the prosecutor has the burden "to prove, beyond a reasonable doubt, that the petitioner is ineligible for

12

resentencing." (§ 1170.95, subd. (d)(3).) Section 1170.95 does not affirmatively define the term "ineligible" but rather, sets forth three conditions that must be satisfied by a petitioner seeking relief, one of which is "(a)(3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." The parties agreed in the trial court and agree on appeal that in an evidentiary hearing under section 1170.95, subdivision (d)(3), the prosecution bears the burden of proof on this issue beyond a reasonable doubt.[6]

Robinson argues the trial court erred by deferring to the jury's special circumstance finding and assessing whether it was supported by substantial evidence under the *Banks/Clark* line of cases, rather than by asking whether the People had proved

---

[6] The Supreme Court is currently considering whether the statute's requirement that ineligibility be proven beyond a reasonable doubt means the prosecution must prove beyond a reasonable doubt to the judge hearing the section 1170.95 petition that the elements of murder under the current law have been established, or whether it is enough to simply show that there is substantial evidence from which a reasonable trier of fact could convict the defendant under the new law. (*People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted January 13, 2021, S265309 [substantial evidence sufficient].) The majority of published cases issued since *Duke* have concluded the standard is beyond a reasonable doubt. (*People v. Fortman* (2021) 64 Cal.App.5th 217; *People v. Clements* (2021) 60 Cal.App.5th 597, 613–619 (*Clements*), review granted April 28, 2021, S267624; *People v. Lopez* (2020) 56 Cal.App.5th 936, 947, review granted February 10, 2021); *People v. Rodriguez* (2020) 58 Cal.App.5th 227, review granted March 10, 2021,, S266652 [proof beyond a reasonable doubt].)

13

beyond a reasonable doubt that she was ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The People argue the court reached the right result in denying the petition, albeit for the wrong reasons, because it should not have held an evidentiary hearing at all.

The People submit that assuming the *Banks/Clark* issue is cognizable in a section 1170.95 petition rather than a petition for a writ of habeas corpus, the issue can and should be resolved when the court reviews the record of conviction as part of its prima facie review under section 1170.95, subdivision (c). They note that a *Banks*/*Clark* issue does not involve the resolution of disputed facts, but is a question of legal insufficiency. (See *In re Miller* (2017) 14 Cal.App.5th 960, 980 (*Miller*).) The People further argue that because the court conducted a *Banks/Clark* review at the evidentiary hearing, it effectively and correctly found there was no prima facie case and the order denying the section 1170.95 petition can be denied on that basis.

We are again guided by *Secrease, supra,* 63 Cal.App.5th 231. In that case, the court held that a pre-*Banks/Clark* felony-murder special circumstance finding does not have a preclusive effect on the question of whether the defendant acted as a major participant and with reckless disregard for life within the meaning of section 1170.95. (*Secrease,* at p. 253–257.) The procedure laid out in *Secrease* requires the court to first consider *Banks* and *Clark* "at the section 1170.95, subdivision (c) entitlement-to-relief stage of the process, where the court's task will be narrowly focused on whether, without resolving conflicts

14

in the evidence and making findings, the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*. If the answer to that is yes, the section 190.2, subdivision (d) finding made against [the defendant] forecloses him [or her] from further litigating that issue, thus rendering him [or her] ineligible for resentencing relief as a matter of law. If the answer is no, an order to show cause must issue and an evidentiary hearing must be held under section 1170.95, subdivision (d)(3)." (*Id*. at p. 264.) Should the case proceed to an evidentiary hearing, the court is bound by the factual determinations necessarily decided by the jury, but it may make its own determination as to issues not resolved by the jury. (*Id*. at p. 247, 254–255.)

We agree with *Secrease* that if there are disputed evidentiary issues—issues not necessarily decided by the jury verdict—which affect whether a defendant will be deemed a major participant who acted with reckless indifference to life, a prima facie case has been established and the *Banks/Clark* inquiry must be decided at an evidentiary hearing as it was here. The court decides those factual issues under the beyond-a-reasonable-doubt standard. (§ 1170.95, subd. (d)(3).) Were there such evidentiary issues in this case?

As the People acknowledge, there were significant credibility issues with Gail Gatan, one of the two eyewitnesses to the attempted robbery to testify at trial. Gatan originally identified the would-be robbers as two men, and at the preliminary hearing she identified Greshinal Green and

15

MacDonald Grady (who was tried but not convicted) as the same two men. Gatan also testified at the preliminary hearing that Robinson was not the person with Green, but by the time of trial, the DA had shown Gatan the security camera footage showing Robinson and Green together, and Gatan identified Green as the shooter and Robinson as the person who was standing next to Green. The other eyewitness to the shooting who testified at trial, Alexander Crispi, also identified Green as the shooter, but described the person who was with him as a man wearing a coat with a fur collar and testified at trial that he did not see Robinson at the scene.

Robinson posits that the evidence would have supported a finding she was not the person standing next to Green when he shot Garvin, but was instead the woman that Gatan and Crispi reported seeing up the street from the shooting. Although the People argue that in finding the special circumstance true the jury must have determined that Robinson was the person standing next to Green, the jury returned no specific findings that necessitated a determination about the identities of the parties or their respective roles in the crime, other than the firearm enhancement showing they believed Green to be the actual killer. As the People note, Robinson was convicted of conspiracy and the jury was instructed with CALCRIM No. 417, which advised them "[a] member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or

16

design of the conspiracy." It is possible the jury convicted Robinson for her involvement in the robbery scheme even if they were not convinced she was the person standing at Green's side. An evidentiary hearing was required to resolve this factual issue, which would affect whether Robinson was deemed a major participant who acted with reckless disregard for life.

This brings us to Robinson's argument that the court incorrectly applied a substantial evidence test to this inquiry. The People acknowledge that *if* an evidentiary hearing was required, reversal is in order because although the court made comments suggesting it was applying the beyond-a-reasonable doubt standard, it made other comments suggesting it was applying a substantial evidence standard and deferring to what it believed were the jury's findings.

The court indicated it was uncertain whether to apply a substantial evidence standard or find proof beyond a reasonable doubt. Defense counsel urged the court to apply a standard of proof beyond a reasonable doubt, and the court at one point seemed to agree: "Let's put it another way. It sounds like then the only person who's in a position to make a determination as to whether this evidence proves beyond a reasonable doubt whatever it has to be proved to me. We can't ask the jury. That's not possible. Essentially, then, I have to decide whether the evidence that we're going to consider proves beyond a reasonable doubt that these Clark/Banks Criteria have been satisfied."

Ultimately, though, the ruling is ambiguous on the standard applied. In denying the petition, the court stated, "The

bottom line on this is *the jury found the Defendant—found true beyond a reasonable doubt that the defendant was a major participant in the crime.* I think the evidence shows that beyond a reasonable doubt. *The jury also found that when the Defendant participated in the crime, she acted with reckless indifference to human life.* I think the evidence shows in the record and in the course of the trial that that has been proved beyond a reasonable doubt; therefore, I'm going to deny the petition." (Italics added.) Although it is possible to read this to mean that although the court was acknowledging the jury's findings it was independently applying a standard of proof beyond a reasonable doubt, another interpretation of the remarks is that the court was crediting and deferring to the jury's findings.

In light of the People's concession that reversal would be required if the evidentiary hearing was appropriate, the case should be remanded for a new evidentiary hearing so that the court can consider the evidence under the appropriate standard and, if it has not already done so, consider whether the People have proven beyond a reasonable doubt that Robinson was a major participant who acted with reckless disregard for life.

C. *Aranda/Bruton*

Robinson contends the court erred in considering evidence that it deemed inadmissible at trial under *People v. Aranda* (1965) 63 Cal.2d 518 (*Aranda*) and *Bruton v. United States* (1968) 391 U.S. 123 (*Bruton*). Our remand makes it unnecessary to resolve this issue.

18

For the guidance of the court on remand, we note that under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), *Aranda-Bruton* now extends only to out-of-court statements that are testimonial in nature. (*People v. Cortez* (2016) 63 Cal.4th 101, 129; *People v. Gallardo* (2017) 18 Cal.App.5th 51, 68–69.) We also note that *Aranda-Bruton* does not apply in a hearing before the court. (See *People v. Walkkein* (1993) 14 Cal.App.4th 1401, 1408.) It does not appear, then, that *Aranda-Bruton* can serve as a reason on remand for excluding the statements of which Robinson now complains.

However, neither the court's recollections nor statements that were excluded at trial are part of the record of conviction. And to the extent they appear only in the clerk's transcript of co-defendant *Green*'s appeal, they cannot be relied upon in resolving *Robinson*'s petition. (See *People v. Falcon* (2020) 57 Cal.App.5th 272, 277, review granted Jan. 27, 2021, S266041 [harmless error to rely on records from co-defendant's trial when assessing section 1170.95 petition of defendant who pled guilty, but proper to use joint preliminary hearing transcript].) The court can consider such statements only if they are offered by the parties as "new or additional evidence" under section 1170.95, subdivision (d)(3). We note that in the previous proceeding, neither party offered the evidence.

### III. DISPOSITION[7]

The judgment (order denying section 1170.95 petition) is reversed, and the case is remanded for a new evidentiary hearing under section 1170.95, subdivision (d).

---

[7] We have denied by separate order Robinson's companion petition for writ of habeas corpus. (*In re Lenora Robinson* (June 8, 2021, A161384) [summarily denying petition].)

20

_____

NEEDHAM, .J.


We concur.


_____

SIMONS, Acting P.J.


_____

RODRIGUEZ, J. *


*People v. Robinson* / 158229


_____

    * Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.